Andrew F. Oehmann
Executive Assistant
Office of the Attorney General

Norbert A. Schlei
Assistant Attorney General
Office of Legal Counsel

OCT 16 1982

Invitation by Italian Government to officials of
the Immigration and Naturalization Service and a
member of the White House Staff, and their wives,
to be guests of the Italian Government, all
expenses, including travel, to be borne by that
Government.

By letter dated September 27, 1962, the Italian Ambassador wrote to the Attorney General as follows:

"I am pleased to inform you that, according
to a communication I have just received from the
Under Secretary of State Giuseppi Lupis, the
Italian Government wishes to extend an official
invitation to visit Italy to the Commissioner
of the Immigration and Naturalization Service Mr.
Raymond Farrell, to the Associate Commissioner
Mr. Mario Noto and to the Special Consultant to
the President Mr. Carmine Bellino. The three
officials and their wives would be the guests of
the Italian Government for about a week. The
invitation, which includes of course the trip
and sojourn expenses, is to be considered as a
sign of good will and a token of friendship, in
the spirit of cooperation existing between our
two countries.

"I shall appreciate very much if you could
kindly inform Mr. Farrell, Mr. Noto and Mr. Bellino
of my Government's invitation, in order to proceed
to the necessary arrangements, in case of their
acceptance."

You have asked whether acceptance of the Italian Government's invitation by the three named officials may, as a
matter of law or policy, be accepted. It is my opinion that

acceptance of this invitation is probably barred by Article I, section 9, clause 8 of the Constitution and by the President's Executive Order No. 10939, "To Provide a Guide on Ethical Standards to Government Officials." Acceptance of the invitation would, in addition, be contrary to the spirit of 5 U.S.C. 115 and be barred by policy considerations embodied in State Department regulations.

1. Article I, section 9, clause 8 of the Constitution provides:

"No Title of Nobility shall be granted by the United States: And no Person holding any Office of Profit or Trust under them, shall, without the Consent of the Congress, accept of any present, Emolument, Office, or Title, of any kind whatever, from any King, Prince, or foreign State."

The trip here involved can be regarded as being literally a "present" 1/ and possibly as an "Emolument" 2/ so far as the invited officials are concerned. Such an interpretation is justified because of the sweeping nature of the constitutional prohibition and the fact that in the past it has been strictly construed, being directed against every possible kind of influence by foreign governments over officers of the United States. For example, one opinion of the Attorney General in 1902 (24 Op. A.G. 116) went to the length of holding that

1/ As a verb, the word "present" means "to offer as a gift; to give or bestow formally." Webster's New International Dictionary, (2nd Ed.) 1955. As a noun, it is "a gift; a gratuity"; Black's Law Dictionary, (3rd Ed.) 1407. It is sometimes used interchangeably with the word "gift," anything voluntarily transferred by one person to another without compensation. See 18 Words and Phrases, (1962 Supp.) 18. A "gift" may take various forms. In Spirt v. Bechtel, 232 F. 2d 241, 248 (2 Cir. 1956) it was held that free or reduced rate trips made by corporate officers of the United States Lines Company and their families and servants on the company's steamships were "gifts."

2/ The term "emolument" has generally been defined as the profit, gain or advantage from office or employment. 14 Words and Phrases, 484.

- 2 -

"even a simple remembrance of courtesy" (in that instance a photograph of Prince Henry of Prussia) comes within the constitutional prohibition against acceptance of "any present . . . or other thing." See also, 6 Op. A.G. 409 (1854); 13 Op. A.G. 537 (1871); 27 Op. A.G. 219 (1909); cf. 40 Op. A.G. 513 (1947).

Despite the sweep of the constitutional prohibition and the strictness of some of the constructions which have been adopted, we are not prepared to take the position that a literal construction is always required and that, without congressional authorization, everything that might fall within a legal definition of the words "present" or "emolument" must always be rejected. Obviously food can be regarded as a "present," yet acceptance of invitations to meals has never been regarded as falling within the proscription. Similarly, if a government official were in a foreign country, and the foreign government arranges a local tour which has some reasonable relation to his official duties, the fact that the host government pays the expenses, would not in our view make the trip a "present" or "emolument." /3/

The trip here proposed, however, is described "as a sign of good will and a token of friendship, in the spirit of cooperation existing between our two countries." It seems to bear little relationship to the official duties of the officials invited and goes far beyond the usual amenities or niceties of diplomatic intercourse. In these circumstances the danger of the underlying purpose of the constitutional prohibition-- placing United States officials in a position of obligation to a foreign power--appears to be substantial enough to conclude that acceptance would probably be barred under Article I, section 9, clause 8, and certainly would be inconsistent with its spirit.

Acceptance of the invitation probably also would be contrary to the spirit of section 3 of the Act of January 31, 1881 (21 Stat. 604, 5 U.S.C. 115 (1958)). Section 3 provides as follows:

---

/3/ In regard to trips paid for by foreign countries we understand that as a matter of practice the State Department distinguishes between trips made to and from such a country and trips made within it. The Department bars the former under all circumstances but permits the latter if related to official duties.

- 3 -

"Any present, decoration, or other thing, which shall be conferred or presented by any foreign government to any officer of the United States, civil, naval, or military, shall be tendered through the Department of State, and not to the individual in person, but such present, decoration, or other thing shall not be delivered by the Department of State unless so authorized by act of Congress."

It could be contended that section 3 is a limitation only upon the acceptance of concrete things, i.e., things which are physically capable of delivery to the State Department and that passage on an Italian ship or airplane, acceptance of shelter, entertainment and food are not a "present . . . or other thing" which can be "tendered" or "delivered" under the statute. Yet the statute illustrates Congress was concerned about possible undue influence being exerted by foreign governments on our officials through gifts of value and, if as part of the invitation actual things were presented, e.g., airline tickets, it is conceivable that the statute would literally apply.

Finally, Executive Order No. 10939, issued May 5, 1961, would also constitute a bar to acceptance of this free trip to Italy. The order applies "to all heads and assistant heads of departments, . . . and members of the White House Staff." Section 2 prohibits an official from accepting any "gift, payment of expenses, or any other thing of monetary value in circumstances which may result in, or create the appearance of, resulting in –

(a). Use of public office for private gain;
(b). An undertaking to give preferential treatment to any person;
(c). Impeding government efficiency or economy;
(d). Any loss of complete independence or impartiality;
(e). The making of a Government decision outside official channels; or
(f). Any adverse effect on the confidence of the public in the integrity of the Government." (Underscoring added).

And section 3 of this Executive Order provides:

"No such official shall receive compensation or anything of monetary value, other than that to which he is duly entitled from the Government, for the performance of any activity during his services as such official and within the scope of his official responsibilities."

The Code of Ethics contained in Executive Order 10939, made applicable to all employees of the Department of Justice by Memo No. 295 issued May 31, 1961, covers Messrs. Farrell and Noto, while Mr. Bellino is subject to the order as a member of the White House Staff.

2. While we know of no decided cases or opinions involving paid trips by foreign governments we have, as already noted, been advised by the Protocol Office of the Department of State that its officials are required to decline invitations to make trips to or from a foreign country at its expense. In addition, at least one recent precedent of a gift or "present" warrants careful attention since it was the subject of an investigation by the Senate Committee on Government Operations. In 1958, newspaper publicity disclosed that the King of Saudi Arabia had made gifts of money and watches to Army personnel who participated in the medical treatment of his infant son at Walter Reed Medical Center, an Army medical facility; and that after his departure, the King had given a $3000 Oldsmobile to the wife of Victor Purse, the protocol officer of the Department of State who had been detailed to the King during his visit. It later appeared that the Army personnel deposited such gifts with the Department of the Army. The gift to Mrs. Purse, however, had unpleasant and embarrassing consequences. The State Department stated that Purse had shown "bad judgment" in permitting his wife to accept the gift, and subsequently transferred him out of the Protocol Division. (N.Y. Times, Oct. 31, 1957, 15:1). When former President Eisenhower was asked about the matter and of officials taking gifts, he replied that each case should be decided according to "good taste" (Id.; October 31, 1957, 10:8), and that the State Department was wrestling with the problem.

As a sequel to the Purse incident, in the following month the State Department issued a new Code of Ethics tightening

- 5 -

the rules against acceptance of gifts, and extending their application to relatives of foreign officials in the State Department (Id. November 19, 1957, 8:6). In a circular to members of the Department and of the Foreign Service, the principle was stressed that unless the gift from a foreign government has "only minor intrinsic value" it should not be accepted, and if accepted to avoid impairment of good international relations, it should be delivered into the custody of the Department of State for later disposition in accordance with law. Return of the gift to the official to whom it was given will not be permitted, the circular stated, "in the case of gifts of such nature or value that, irrespective of the actual intent of the giver, it could reasonably be inferred by anyone that the gift would, in fact, establish influence or constitute an added payment for services already included in the employment relationship of the recipient to the United States Government". Department of State Circular No. 277, November 13, 1957, a copy of which is contained in Department of Justice File No. 145475, section 1.

Based upon the foregoing, it seems clear that this invitation should be declined by all three officials.